McCALEB, Justice.
 

 The Louisiana Bar Association, appearing herein through the Committee on Professional Ethics and Grievances, filed this summary proceeding which has for its purpose the disbarment of one Mary H.- Connolly, a member of the Bar of this State. The ground upon which the disbarment of the respondent is sought is that she is unworthy to continue as a practicing attorney having been convicted, in the United States District Court for the Eastern District of Louisiana, New Orleans Division, in the matter entitled “United States of America v. Joseph H. Connolly and Mary H. Connolly”, No. 20,275 of the Criminal Docket of said Court, of willfully attempting to defeat and evade the payment of income taxes due the United States for the years 1936, 1937, 1938 and 1939, which is a felony under the federal statutes punishable by fine and imprisonment in the federal penitentiary. The proceeding instituted against the respondent is authorized by, and the charges made are in strict conformity with, Section 12 of Article XIII of the Articles of Incorporation of the Louisiana State Bar Association which has been adopted as a rule of this court and which reads as follows:
 

 “Section 12, Member Convicted of Felony. Whenever any member of the bar shall be convicted of a felony and such conviction shall be final, the Committee may present to the Supreme Court a certified or exemplified copy of the judgment of such conviction, and thereupon the court may, without further evidence, if in its opinion the case warrants such action, enter an order striking the name of the person so convicted from the roll of attorneys and cancelling his license to practice law in the State of Louisiana. Upon the person so convicted being pardoned by the President of the United States or Governor of this State, the Court, upon application may vacate or modify such order of disbarment.”
 

 In accordance with the prayer of the Committee, this court issued an order for respondent to show cause on April 28, 1942, why her name should not be stricken from the roll of attorneys and why her license to practice law in the State of Louisiana should not be cancelled. In compliance with this order of the court, the respondent appeared on the appointed day and filed, in limine, an exception of no right or cause of action which is based upon the following contentions:
 

 1. That Section 12 of Article XIII of the Charter of the Louisiana State Bar Association adopted as a rule of the court, providing for the summary disbarment of attorneys convicted of a felony, does not apply to a federal court conviction of a federal offense which is not cognizable under the laws of this State;
 

 
 *351
 
 2. That the rale of court is inapplicable to this case, for the reason that the conviction of respondent consists solely of the federal court’s acceptance of her plea of nolo contendere followed by a sentence of fine only and a suspension of imprisonment;
 

 3. That the rule of court is inapplicable to the offense for which respondent was convicted because the offense of willfully attempting to evade income taxes is one which does not involve moral turpitude, and
 

 4. In the alternative, if the rule of court is held to pertain to the cáse, then the rule is unconstitutional in that it is violative of Section 10 of Article VII of the Constitution of 1921 which limits the original exclusive jurisdiction of this court in all disbarment cases to matters involving misconduct of the members of the bar.
 

 It will be noted from the contentions made by the respondent that a serious challenge is made not only with respect to the applicability of our rule to her case but also as to the fundamental right and power of this court to enact and enforce* it. For this reason, we address our immediate attention to the question respecting the constitutionality of the rule of court because, if, as respondent contends, it is unconstitutional, the other points relied upon by her with reference to the inapplicability of the rule to this case need not be considered.
 

 The identical question concerning the constitutionality of the rule of court has been raised in the matter of Louisiana State Bar Association v. Richard W. Leche, La.Sup., 9 So.2d 566
 
 [1]
 
 where lengthy and comprehensive briefs have been filed by opposing counsel and also by amici curiae. Counsel for the respondent have adopted the arguments advanced by defense counsel in the Leche case as their argument on the constitutional question in this matter.
 

 The attack upon the constitutionality of the rule of court is founded upon the provisions of Section 10 of Article VII of the Constitution of 1921 which defines the general supervisory powers and the original and appellate jurisdiction of the Supreme Court. The pertinent part of that section ordains: “It shall have exclusive original jurisdiction in all disbarment cases involving misconduct of members of the bar, with the power to suspend or disbar under such rules as may be adopted by the court, 5}:
 
 % >9
 

 It is said by the respondent that the foregoing grant of exclusive original jurisdiction to this court in all disbarment cases is limited and qualified by the Words “involving misconduct of members of the bar”, and that, therefore, the court is without power or jurisdiction to adopt a rule ■whereby the mere allegation that a lawyer has been convicted of a felony, supported by a certified copy of the judgment of conviction, constitutes a valid ground for his disbarment; that it is necessary, in order for a petition for disbarment to state a cause of action, that it be alleged that the attorney committed an act of misconduct and that the facts upon which
 
 *353
 
 the charge of misconduct is predicated be set forth. In other words, it is maintained that the conviction of a felony is not, in itself, a ground for disbarment because the jurisdiction of this court in disbarment matters is limited by the Constitution to cases involving misconduct.
 

 A consideration of the lucid language used in the Constitution makes it apparent that, while this court has been vested with exclusive original' jurisdiction in all disbarment cases, the jurisdiction is expressly limited to cases involving misconduct of the members of the bar. We use the word “limited” advisedly because it is difficult to believe that the framers of the Constitution of 1921 intended to curtail or restrict the inherent or implied powers of this court over the members of the bar which it unquestionably possesses. Rather, we think, that the members of the Constitutional Convention, in providing that this court be vested with exclusive original jurisdiction of all cases of disbarment involving misconduct, indicated that they recognized and confirmed the court’s inherent power over members of the bar. Under the previous Constitutions of 1898 and 1913, the jurisdiction of this court in disbarment cases was restricted to “all matters touching professional misconduct of members of the bar, * * * (Article 85 of Constitutions of 1898 and 1913.) Hence, when the members of the Constitutional Convention of 1921 deleted the qualifying word “professional” in drafting Section 10 of Article VII, they not only extended the exclusive original jurisdiction of the court to all disbarment cases in-volving any misconduct on the part of an attorney but, we think that they manifested the intention of conferring upon the court plenary power to prescribe and determine the acts of the attorney which would be deemed to be misconduct. It is likewise reasonable to suppose that the members of the Constitutional Convention felt that this court would not undertake to expel any attorney unless he committed acts affecting his integrity or good moral character which he possessed at the time of his admission to the bar and which he agreed to maintain when he took his oath as an officer of the court. Accordingly, it could be plausibly argued that the phrase “involving misconduct of members of the bar” which follows the grant of jurisdiction to this court is merely descriptive of the reason for disbarment of an attorney, i.e., misconduct, and that it was not intended to be regarded as a limitation upon the jurisdiction of the court.
 

 However, in spite of any notions we may entertain respecting the intention of the members of the Constitutional Convention of 1921, the language used in Section 10 of Article VII is too clear and direct in its meaning to authorize us to inquire into the reasons which prompted the Convention to limit our jurisdiction to matters “involving misconduct of members of the bar”. Hence, it must be resolved that this court, in exerting its recognized inherent power to enact rules governing the conduct of the members of the bar, is without right to pass a rule applicable to disbarment proceedings having for its purpose the creation of a separate and distinct
 
 *355
 
 ground for disbarment which is not founded upon acts of misconduct.
 

 A study of the prior jurisprudence of this court, considered in connection with the history of the constitutional provision under discussion, has been sufficient to impress us with the correctness of the conclusion above stated.
 

 The implied or inherent power of the court over attorneys at law has never been questioned. In fact, in this and in the Leche case, all counsel concede that this court, in the absence of constitutional restriction, has plenary power to admit or reject applicants for admission to the bar under such rules and regulations as it may adopt and that it also may, in its discretion, define and prescribe standards governing the conduct of attorneys after their admission. Ex parte Steckler, 179 La. 410, 154 So. 41, 45. And the court, while it will approve legislative acts passed in aid of its inherent power, will strike down statutes which tend to impede or frustrate its authority. Meunier v. Bernich, La.App., 170 So. 567. It also seems too plain, for serious argument that, since the attorney at law obtains his license or franchise from the court, the court necessarily possesses plenary power to suspend or expel him where he has failed to maintain the standard of moral character required of him at the time of his admission. This is the generally accepted doctrine. The right of the court to expel in such instances cannot be set aside by mere legislative action. However, it can be limited or restricted by constitutional provision for the reason that the Constitution is the source of all governmental powers.
 

 The general authority of the court in disbarment matters was first recognized in 1810 when the Superior Court of the Territory of Orleans disbarred an attorney for having allegedly concerted with negroes and mulattoes of Santo' Domingo in the indiscriminate massacre of the white population. See Dormenon’s Case, 1 Mart., O. S., 129.
 

 Under the first Constitution of Louisiana, that of 1812, the Supreme Court was vested with appellate jurisdiction only, art. 4, § 2. That Constitution and the five others which preceded the Constitution of 1898, did not contain a grant of original jurisdiction to the Supreme Court in disbarment cases and the court, in the cases coming before it for adjudication, declined to recognize that it possessed any implied or inherent powers over these matters and refused to entertain them on the ground that, under the Constitution, the court was vested with appellate jurisdiction only. See Pain v. Plique and Le Beau, 10 La. 304, and Robouam’s Heirs v. Robouam’s Executor, 12 La. 73.
 

 The procedure for the disbarment of attorneys, prior to the passage of Act No. 129 of 1896, was provided for by Sections 118, 119 and 120 of the Revised Statutes. Under these sections, the criminal courts were given jurisdiction of the proceeding. In Chevalon and Wife v. Schmidt, 11 Rob. 91, and again in Turner v. Walsh, 12 Rob. 383, both decided in 1845, it was held that, under those sections of the Revised Statutes, the license of an attorney could not be with
 
 *357
 
 drawn or annulled except on conviction in a court having jurisdiction of criminal proceedings and that the case must be brought by information and trial had by jury. By Act No. 129 of 1896, provision was made by the Legislature for the disbarment of attorneys in civil proceedings. That statute declared that, if any attorney had been convicted of a felony or was guilty of gross professional misconduct, he was subject to summons before the district court in the parish in which he resided on a petition signed by not less than ten attorneys, and, if the allegations of the petition were proved, the court had the right, in its discretion, to render judgment reprimanding, suspending or disbarring him.
 

 In State ex rel. Adams v. Judge, 49 La. Ann. 1015, 22 So. 195, decided in 1897, it was held that, while Act No. 129 of 1896 did not have the effect of repealing Sections 118, 119 and 120 of the Revised Statutes, it provided an additional remedy for disbarment of an attorney in a civil proceeding upon a showing that he had been convicted of a felony or that he was guilty of gross professional misconduct.
 

 By Article 85 of the Constitution of 1898, this court was given, for the first time, exclusive original jurisdiction “in all matters touching professional misconduct of members of the bar, * * * ”. And, in the case of State v. Fourchy, 106 La. 743, 31 So. 325, it was held that the constitutional grant of exclusive original jurisdiction was of a limited nature and conferred upon this court the right only to hear and determine as an original proposition disbarment cases in which professional misconduct of an attorney was charged. Chief Justice Monroe, the author of the opinion in the Fourchy case, served as a member of the Constitutional Convention of 1898. In speaKing for the court with respect to the extent of the constitutional grant of jurisdiction, he said (see page 760 of 106 La., page 333 of 31 So.): “It will be observed that when this constitutional provision was adopted the act of 1896 was in force; and that, by the terms of that act, jurisdiction is conferred upon the district courts to disbar any attorney at lav/ who ‘shall be convicted of any felony,
 
 or
 
 shall be guilty of a gross professional misconduct.’ (Italics by the court.) The convention which adopted the constitution might have used the same terms in conferring jurisdiction upon this court, but it did not. And from the language used, no other conclusion can fairly be drawn than that it was the deliberate purpose of that convention to limit the exceptional ‘exclusive and original’ jurisdiction so Conferred to cases of professional misconduct, whilst leaving nonprofessional misconduct to be dealt with in the first instance by the courts of ordinary and general jurisdiction, as provided by the existing laws.”
 

 Thus, it will be seen from the foregoing quotation that the court in State v. Fourchy adopted the view that the exclusive original jurisdiction in disbarment cases conferred upon this court by the constitutional provisions was restricted to cases involving professional misconduct and that the Act of 1896, insofar as it made conviction of a felony a separate ,and independent ground for disbarment, remained in force and effect, with original jurisdiction vested in the
 
 *359
 
 district court of the residence of the lawyer sought to be disbarred. This is shown, not only by the quotation supra, but also by the following paragraph of the decision where it is declared: “There is here presented, therefore, no question of the inherent jurisdiction of a court to purge itself of an unworthy officer, or of a conflict, arising therefrom, between legislative and judicial authority, since the jurisdiction specifically invoked by the state, and the only jurisdiction invoked for the purposes of this case, is that which has been conferred upon this court, in plain language, by the constitution which established the court itself, which jurisdiction, according to the terms of the grant, does not extend to the matter now under consideration.”
 

 The decision in the Fourchy case respecting the limited jurisdictional grant (Article 85 of the Constitutions of 1898 and 1913) to this court in disbarment cases involving professional misconduct was approved and reaffirmed as late as 1917 in the case of State v. Weber, 141 La. 448, 75 So. 111. In that matter, disbarment proceedings were instituted against Weber on the ground that he had been convicted of the crime of forgery. It appeared that the forgery for which he was convicted was committed by him in his individual capacity and not in his professional capacity. The court held that it was without jurisdiction of the case, citing State v. Fourchy as authority for dismissing the suit. '
 

 The only case which we have been able to find wherein the correctness of
 
 the
 
 decisions in the Fourchy and Weber cases are questioned is State v. Gowland, 189 La. 80, 179 So. 41. In that matter, it appeared that Gowland had been disbarred in 1910 by a decree of this court in a proceeding based upon his conviction of a felony. State v. Gowland, 126 La. 262, 52 So. 480. Later, upon being granted a full pardon for the offense for which he was convicted, he presented a petition to the court to have himself reinstated as a practicing attorney. His application was denied. 174 La. 351, 140 So. 500.
 

 Subsequently, in 1938, he filed another petition requesting the court to declare that its decree of disbarment rendered in 1910 was absolutely null on the ground that the offense for which he had been convicted did not involve professional misconduct and, hence, that the court had no original jurisdiction to render the disbarment decree. Reliance was placed upon the cases of State v. Fourchy, supra, and State v. Weber, supra, in support of the proposition. The court, however, refused to annul the decree of disbarment rendered in 1910 stating that Gowland was not disbarred for professional misconduct but because of the fact that he was convicted of a felony and was thereby disfranchised. It was declared in the opinion that the ruling m State v. Weber was based upon obiter dicta contained in the Fourchy case and that, since the expressions in the Fourchy case relied upon by the court in the Weber case were not necessary to the conclusion reached in the former decision [189 La. 80, 179 So. 43], the Weber case was “based upon a misunderstanding of the cause for which the disbarment should have been
 
 *361
 
 pronounced, and is not to be regarded as authority”.
 

 An examination of the original proceedings under which Gowland was disbarred (126 La. 262, 52 So. 480) shows that he was charged with professional misconduct in that he had been convicted of the crime of forgery and was thereby rendered morally unfit to continue in the practice of law. The allegations (which were not denied) were sufficient to vest the court with jurisdiction of the case. Therefore, Gowland1 s belated attack, some 28 years later, that the court did not have jurisdiction because the crime for which he was convicted had no relation to his professional conduct, involved a question of fact and the court was correct in refusing to set aside the original decree. However, a reconsideration of the ground upon which that decision is pitched — that is that this court has jurisdiction to disbar an attorney because he has been disfranchised by reason of a conviction for a crime and not because he was guilty of misconduct — is in discord with the Weber and Fourchy cases which we believe are based upon sound principles of constitutional law. As a consequence, the expressions contained in the Gowland case, with reference to the incorrectness of the conclusion reached in State v. Weber, will not be followed.
 

 Under the Constitution of 1921, the jurisdictional grant to this court in disbarment cases was enlarged so as to include all misconduct (professional and non-professionai) of members of the bar. And, in this grant (Section 10 of Article VII), as an aid to its jurisdiction, the plenary power of the court “to suspend or disbar under such rules as may be adopted by the court” is recognized by specific declaration. But the power to prescribe rules in disbarment matters must be considered in connection with the nature of the jurisdictional grant and the prior jurisprudence which declares that this grant is restricted to cases involving professional misconduct (presently, any type of misconduct). Therefore, in conformity with the rulings in the Fourchy and Weber cases, we hold that, while the court has the right and authority to pass any reasonable rule respecting disbarment cases involving misconduct of attorneys, it cannot extend its jurisdiction by rules creating independent grounds for disbarment not founded upon acts of misbehavior.
 

 The question, therefore, is — Did this court by the adoption of Section 12 of Article XIII of the Articles of Incorporation of the Louisiana State Bar Association establish a separate and distinct ground for disbarment which is not based on the misconduct of the attorney?
 

 A careful consideration of the rule has convinced us that the question must be answered in the negative. The rule provides, in substance, that “Whenever any member of the bar shall be convicted of a felony * * * ” and there is presented to the court “a certified or exemplified copy of the judgment of such conviction, * * * the court
 
 may, without further evidence, if in its opinion the case warrants such action,
 
 enter an order striking the name of the person so convicted from the roll of attorneys *
 
 *
 
 (Italics ours.)
 

 
 *363
 
 The expression “may, without further evidence” merely indicates that the court will accept the record of conviction as evidence of the misconduct of the attorney, and, after an examination of such record, the court will determine whether the acts for which the attorney has been found guilty in a criminal proceeding constitute such misconduct as to declare him unworthy to continue in the practice of law. As we view it, the rule is based exclusively on the jurisdictional grant for disbarment of attorneys for misconduct and it simply provides for a consideration of the judgment of conviction as prima facie evidence establishing the fact of misconduct. We think that this is a fair and reasonable interpretation of the rule for. if the court had intended to adopt a tenet that conviction of crime would, of itself, be an independent ground for disbarment, irrespective of misconduct, it would have provided that the judgment of conviction should be conclusive.
 

 In many of the states of the Union, statutes have been enacted which provide that the conviction of a felony or even conviction of a misdemeanor involving moral turpitude are grounds for disbarment of an attorney. Under these statutes,, the judgment of conviction is made conclusive and the court does not exercise any discretion whatever with respect to the penalty to be imposed. These laws are not founded upon misconduct but rather are based upon the premise that “To permit an attorney who' has been convicted of a felony or reprehensible misdemeanor to continue to function as an officer of a court of justice would bring discredit upon the court, and tend to cause it to lose the respect and confidence of the public which it must have if it is to function at its best in the administration of justice.” See In re Casebier, 129 Kan. 853, 284 P. 611, 612; In re Minner, 133 Kan. 789, 3 P.2d 473, 79 A.L.R. 35; Commonwealth v. Porter, 242 Ky. 561, 46 S.W.2d 1096, and In re Lindheim, 195 App.Div. 827, 187 N.Y.S. 211.
 

 In Louisiana, we have a similar statute (Act No. 129 of 1896) which makes it mandatory that an attorney at law who has been convicted of a felony be punished by reprimand, suspension or disbarment. But original jurisdiction of the disbarment proceedings under that statute is vested in the district court of the residence of the attorney and not in this tribunal. State v. Fourchy, supra.
 

 Since we find that Section 12 of Article XIII of the Articles of Incorporation of the Bar Association is constitutional because it is a rule respecting the trial of disbarment cases based upon misconduct, we pass on to consideration of the next contention presented by counsel for the respondent which is that the rule is invalid for the reason that the rule-making power of this court extends to procedural matters only and not to those affecting substantive law.
 

 This contention is founded on the theory that the rule under consideration, which has the effect of making the judgment of conviction of a felony prima facie evidence of misconduct and of shifting the burden of proof to the respondent to rebut the presumption, is an enunciation of a principle of substantive law by the court and is
 
 *365
 
 tantamount to a legislative act. Therefore, it is argued that the rule is unconstitutional because it contravenes Sections 1 and 2 of Article II of the Constitution, which provide for a separation of powers between the legislative, executive and judicial departments and prohibit the exercise by one department of power properly belonging to either of the others, and Section 3 of Article VII of the Constitution which provides in substance that the function of the courts shall be strictly judicial.
 

 The general principle concerning the rule-making power of courts is stated in 21 Corpus Juris Secundum, Courts, § 172, p. 266, as follows: “The principle that courts may prescribe reasonable rules, not contravening the constitution or statutes,
 
 nor affecting substantive law,
 
 has been applied to rules regulating various matters of practice and procedure.” (Italics ours.)
 

 Cases from a vast majority of the states are cited in support of the foregoing doctrine. Considerable difficulty, however, has been encountered by the courts in determining what is a rule of substantive law as distinguished from a rule of practice and procedure, particularly with respect to rules of law concerning the admissibility and effect to be given to evidence. Of course, where the court rule unquestionably deprives the party of a substantive right to which he is entitled under the law of a State, it will be held invalid. See Cities Service Oil Co. v. Dunlap, 308 U.S. 208, 209, 60 S.Ct. 201, 84 L.Ed. 196. And where the rule of an inferior court has the effect of admitting illegal evidence, it will be set aside. See Kennedy’s Heirs v. Meredith, 3 Bibb., Ky., 465. Also Pelz v. Bollinger, 180 Mo. 252, 79 S.W. 146. On the other hand, a rule of court, which abrogated a statute providing that the court in a criminal case must instruct the jury that no inference of guilt shall arise against the accused from his failure to testify in his own behalf, has been held not to invade the realm of substantive law but is a valid exercise of rule-making power “since ‘procedure’ is broader term than practice and includes pleading, evidence, and practice; ‘practice’ is course of procedure in courts and ‘substantive law’ is that part of law creating, defining, and regulating rights”. See State v. Pavelich et al., 153 Wash. 379, 279 P. 1102.
 

 Questions respecting the difference between rules of practice and procedure and rules of substantive law have generally arisen in cases involving conflict of laws where the courts have been confronted with the duty of determining whether to apply a local rule of evidence or the law applicable in the foreign state. And many close distinctions have been drawn as to whether the local rule involved a matter of substantive law or of procedure. Be this as it may, we do not deem it to be of importance in the case at bar whether the rule of court under attack is to be classed as one of substantive law or not for the reason that 'we believe that, conceding it to be one of substantive law, it is fully authorized and contemplated by the provisions of Section 10 of Article VII of the Constitution and cannot, therefore, be said to be in conflict with Section 2 of Article II and Sec
 
 *367
 
 tion 3 of Article VII as contended for by counsel for the respondent.
 

 It is to be borne in mind that the grant in Section 10 of Article VII of the Constitution of “exclusive original jurisdiction in all disbarment cases involving misconduct of members of the bar”; is followed by the phrase
 
 “with the power to suspend or disbar under such rules as may be adopted by the court
 
 * * *.” (Italics ours.) The grant of jurisdiction, while it must be adjudged to be limited to cases of disbarment involving misconduct, also contains a recognition of plenary power to suspend or disbar “under such rules as may be adopted by the court”.
 

 We cannot believe that the framers of the Constitution of 1921 intended, in authorizing us to enact rules in aid of our jurisdiction in disbarment cases involving misconduct, to restrict-the right delegated to mere rules of practice and procedure. On the contrary, the history of the constitutional provision now under consideration and the language contained therein make it evident that the Constitutional Convention of 1921 gave approval to the existing inherent power of this court to govern the conduct of the members of the bar.
 

 Under the court’s admitted inherent power to admit attorneys to practice, it has adopted rules prescribing certain qualifications which must be complied with by the applicant as a condition to obtaining his license. These regulations are unquestionably ones of substantive law. Yet no one would venture to suggest that the court, in pursuance of its implied judicial power, did not have the right to prescribe them. The-limitation of jurisdiction with respect to disbarment proceedings contained in the Constitution refers solely to the grounds for disbarment but the recognition of the power of the court to adopt rules in aid of its-jurisdiction is not in anywise restricted.
 

 It is, however, argued by respondent that,, if we maintain the rule of court under attack, it will be equivalent to declaring that an attorney should be disbarred on hearsay evidence, i. e. the verdict of a jury, and we are reminded that, since this is a civil proceeding, the law of evidence is well established that convictions of crime are not admissible as proof in a civil case. It is-also suggested that approval of the rule will be tantamount to- an abdication of our exclusive original jurisdiction in disbarment cases; whereas, the framers of the Constitution, in vesting such jurisdiction in us, intended that we, and not some other court,, should investigate the charges of misconduct and determine for ourselves whether such misconduct in fact exists.
 

 We cannot coincide in these postulations. The rule provides in substance that the conviction of a felony makes out a prima facie case of misconduct. There is nothing very strange or inappropriate in receiving the judgment of conviction of another court as presumptive evidence of wrong-doing on the part of the lawyer. He has already been tried and found guilty of a felony by a jury under conditions which would not prevail in a disbarment proceeding. Throughout the trial for the criminal offense, he was clothed with the presumption of innocence; he was entitled to an
 
 *369
 
 ..acquittal if the facts were not such as to •prove him guilty beyond a reasonable doubt and he was protected by many other constitutional rights which are particularly applicable to the trial of all criminal cases. .Above all, the final judgment of conviction by a court of competent jurisdiction evidences the fact that the trial was fair and that none of the accused’s rights were invaded. Why, then, should not such a judgment be admitted in evidence and be considered as presumptive proof of misconduct in a disbarment case? Felonies generally involve wrongful conduct. The rule of ■court does not deprive the lawyer of his defense, if he has a valid one.
 

 That a judgment of conviction of a felony will be regarded as prima facie evidence of misconduct in a disbarment proceeding, while not necessarily conclusive, is sustained by all the authorities. In the case of State v. O’Leary et al., 207 Wis. 297, 241 N.W. 621, 622, 81 A.L.R. 1193, proceedings to revoke the licenses of the defendants as attorneys at law were brought in the Supreme Court of Wisconsin on the ground that they had been convicted of a conspiracy to defraud the United States. The questions presented to the court were: (1) whether the records of conviction were conclusive evidence of guilt in the proceeding for disbarment and (2) whether such convictions established a prima facie case. There was no statute in Wisconsin which contained provisions constituting the conviction of a felony a separate, distinct and independent ground for disbarment. The court held that the question in every disbarment proceeding is whether the facts show that the defendant did not possess the essential character qualifications to continue in the profession and that, therefore, the record of conviction of a felony should not be considered as conclusive evidence of wrong-doing. However, as to the second question, the court concluded that the record of conviction was not merely evidence of defendant’s guilt of the crime and his unfitness to practice law “but that prima facie it establishes both facts”. And, in remanding the case to the referee, the court observed: “However, defendants may show, if they are able so to do, that the facts which formed the basis for their conviction are not true, and it is considered that the matter should be referred solely for the purpose of giving defendants this opportunity.”
 

 In an annotation which follows the report of the O’Leary case in 81 A.L.R. at page 1196, and which deals with cases where there is no state statute providing that conviction of a crime is an independent ground for disbarment, it is said:
 

 “In some jurisdictions it is held that, where conviction of a crime involving moral turpitude is not made by statute an independent ground for disbarment, a showing of a conviction of such a crime in a disbarment proceeding prima facie establishes the guilt of the convicted attorney and his unfitness to continue in the legal profession.”
 

 In support of the statement contained in the text, the cases of State v. O’Leary, supra; In re Kaufmann, 245 N.Y. 423, 157 N.E. 730; Branch v. State, 99 Fla. 444, 128 So. 487; State v. Holding, 12 S.C.L. 379, 1 McCord 379; In re Weare, 2 Q.B. (Eng.)
 
 *371
 
 439; In re Solicitor, 61 L.T.N.S. (Eng.) 842 (affirmed 37 Week Rep. 598 — C.A.); People ex rel. Hirschi v. Payson, 215 Ill. 476, 74 N.E. 383, and People ex rel. Bar Ass’n v. Burton, 39 Colo. 164, 88 P. 1063, 121 Am.St.Rep. 165, are cited.
 

 The text continues with the statement that: “Some of the decisions indicate an adoption of the view that, where conviction of a crime involving moral turpitude is not made an independent ground for disbarment, the showing of such a conviction in a disbarment proceeding conclusively establishes the convicted attorney’s ' guilt and his unfitness to continue the practice of law.” Cases cited supporting this statement are State v. Stringfellow, 128 La. 463, 54 So. 943; Underwood v. Com., 105 S.W. 151, 32 Ky.Law Rep. 32; State ex rel. Sorensen v. Scoville, 123 Nev. 457, 243 N.W. 269; the dissenting opinion of Field, J., in Ex parte Wall, 107 U.S. 265, 2 S.Ct. 569, 27 L.Ed. 552; People ex rel. Chicago Bar Ass’n v. Meyerovitz, 278 Ill. 356, 116 N.E. 189; People ex rel. Deneen v. Gilmore, 214 Ill. 569, 73 N.E. 737, 69 L.R.A. 701, and State ex rel. Guille v. Chapman, 11 Ohio 430.
 

 In addition to the foregoing authorities, it is to be observed that in the recent case of Matter of Donegan, 282 N.Y. 285, 26 N.E.2d 260, 263 (a case which is heavily relied on by the respondent as supporting another contention which will be later discussed) j the Court of Appeals of New York, while holding that the provisions of Subdivision 3 of Section 88 of the New York Judiciary Law, Consol.Laws, c. 30, did not apply to a conviction for violation of a federal statute and that a disbarment proceeding brought under that particular subdivision could not be maintained solely on the ground of such conviction, it remanded the case for further proceedings under Subdivision 2 of Section 88 of the Judiciary Law authorizing the appellate division to govern the conduct of attorneys and remarked: “The judgment of conviction will constitute at lease prima facie evidence of guilt of the crime charged, cf. State v. O’Leary, 207 Wis. 297, 241 N.W. 621, [annotated], 81.A.L.R. p. 1193.”
 

 In People ex rel. Chicago Bar Ass’n v. Meyerovitz, supra [278 Ill. 356, 116 N.E. 192], the court said: “It is not the conviction which justifies disbarment, but the commission of the act. The record of the conviction is conclusive evidence of the guilt of the accused, but guilt may be proved without such record.”
 

 In State v. Stringfellow, supra, decided in 1911, an original proceeding was instituted in this court to disbar the defendant on grounds of professional misconduct in that he had been indicted and convicted of embezzlement of funds of one of his clients, of conspiracy to forge and utter as true a certain acceptance and waiver of citation in a divorce suit, and of the forgery and uttering as true of this same acceptance of service and waiver of citation. After the defendant had been served with process, he applied to the court for a commission to take testimony on the charges on which he had been already tried and convicted. The state objected to any further inquiry being made into the guilt or the innocence of the defendant on the charges, pleading that the judgment and
 
 *373
 
 sentence against the defendant in the Criminal District Court was res adjudicata. The court sustained the objection of the state and disbarred the defendant upon the evidence of the judgment of conviction stating: “That the said judgment, though possibly not technically res adjudicata, yet is conclusive, appears to us to be a plain proposition.”
 

 The ruling of this court in the String-fellow case is obviously more drastic in its effect than the present rule of court now under attack which merely establishes a prima facie case of misconduct against the respondent.
 

 In view of the constitutional grant of power to this court to suspend or disbar an attorney for misconduct under such rules as may be adopted by the court and the authorities hereinabove cited, we hold that the objection of the respondent that the rule of court is unconstitutional because it enunciates a principle of substantive law is not well founded.
 

 Another question raised by the respondent is that the rule of court invoked in this case is inapplicable for the reason that her conviction consists solely of the federal court’s acceptance of her plea of nolo contendere followed by a sentence of fine only and a suspension of imprisonment. Many cases are cited in support of this proposition to show that a plea of nolo contendere is not to. be regarded as analogous to a plea of guilty and that, while the acceptance of such a plea authorizes the court to impose a sentence, it is not to be considered as an admission of guilt in other proceedings.
 

 We find no substance in this contention of the respondent for the reason that the rule invoked by the Bar Association makes the judgment of conviction prima facie evidence of misconduct. The allegation that respondent has been convicted of a felony, coupled with the presentation of a certified copy of the judgment of conviction, is sufficient to sustain the cause of action. And it makes no difference whether the judgment of conviction was entered as a result of a plea of guilty, verdict of a jury or a plea of nolo contendere. The question of the effect of the plea of nolo contendere is one which is properly addressed to the merits of the case.
 

 A similar contention is made by the respondent that the rule of court is inapplicable to her case* maintaining that the offense for which she stands convicted does not involve moral turpitude. The question as to whether the felopy for which respondent was convicted constitutes misconduct will be considered on the merits of the cáse. The rule of this court relied upon by the Bar Association is founded upon the theory that felonies punishable by incarceration in a penitentiary prima facie establish reprehensible behaviour on the part of the attorney. Hence, it will be presumed, on a trial of an exception of no cause of action in a disbarment proceeding based upon allegations that the lawyer sought to be disbarred has been convicted of a felony, that the offense was one which involved acts of misconduct on his part.
 

 
 *375
 
 The final point raised by the respondent on her exception of no cause of action is that the rule of court is inapplicable to her case because the rule has reference only to the conviction of felonies punishable under the laws of Louisiana and not to a conviction of a federal offense which is not cognizable under the laws of this State. This contention might have some merit if the rule under attack provided that the1 conviction of a felony was, in itself, a ground for disbarment. However, as we have hereinabove pointed out, the rule is not to be interpreted to mean that disbarment results because of the judgment of conviction but because the judgment of conviction is prima facie evidence of misconduct on the part of the attorney. A careful consideration of the cases relied upon by the respondent in support of her contention, and notably the Matter of Donegan, supra, will exhibit the soundness of this conclusion.
 

 In the Matter of Donegan, disbarment proceedings were instituted in the Appellate Division of the Supreme Court of New York under the provisions of Subdivision 3 of Section 88 of the New York Judiciary Law which declares:
 

 “§ 88. Admission to and removal from practice by appellate division. * * *
 

 “3. Whenever any attorney and counsellor-at-law shall be convicted of a felony, there may be presented to the appellate division of the supreme court a certified or exemplified copy of the judgment of such conviction, and thereupon the name of the person so convicted shall, by order of the court, be stricken from the roll of attorneys.”
 

 The conviction upon which the disbarment proceeding was founded was by the United States District Court of the Southern District of New York for the crime of conspiracy to use the mails to defraud. The judgment of conviction had been affirmed by the United States Circuit Court of Appeals, Second Circuit, United States v. Dilliard, 101 F.2d 829, and an application for certiorari had been denied by the Supreme Court of the United States, 306 U.S. 635, 59 L.Ed. 484, 83 L.Ed. 1036. The question presented to the court for determination was whether the New York Judiciary Law, in making an ’ attorney’s conviction of a felony an absolute ground for disbarment, included convictions of felonies cognizable under the laws of the United States as well as felonies punishable under the State statutes. The court found that it was the intention of the New York Legislature to include felonies punishable under the laws of the United States-as well as those cognizable under the New York law for the reason that Subdivision 4 of Section 88 of the Judiciary Law provided that the Appellate Division should have power to vacate or modify an order of disbarment where the attorney, who had been convicted, had been pardoned by the President of the United- States. However, the court resolved that, since the statute, while not strictly a penal one, required the court to automatically and irrevocably disbar the attorney for life, its consequence in effect was most severe and partook of the nature of punishment.
 
 *377
 
 “Hence”, said the court, “the statute must be interpreted in the light of the fundamental canon that penal statutes must be strictly construed.”
 

 Under this strict construction of the statute, the court held that it did not apply to a conviction for a crime made a felony under the federal law, unless the acts which constituted the crime were also punishable under the laws of the State of New York as a felony. . And it concluded that, since the crime of conspiracy was only a misdemeanor under the New York law, the statute providing for summary disbarment of an attorney convicted of a felony did not govern the case.
 

 However (as has been hereinabove pointed out), the court did not dismiss the disbarment proceeding entirely. On the contrary, it remanded the matter to the appellate division of the Supreme Court to be proceeded with under Subdivision 2 of Section 88 of the Judiciary Law (which authorizes that court to govern the conduct of attorneys) with the statement that the judgment of conviction “will constitute at least prima facie evidence of guilt of the crime charged”.
 

 It will be seen at a glance that the decision in the Donegan case, with which we are in full accord, is not authority for the contention made by the respondent in the case at bar. The rule invoked by the Bar Association in this case is quite different from Subdivision 3 of Section 88 of the New York Judiciary Law. That statute provides for the summary disbarment of an attorney who has been convicted of a felony. The judgment of conviction is conclusive and disbarment follows as a matter of course. Conversely, our rule of court does not so provide, and, if it did, it might be considered to be beyond the power of the court for the reason above stated that our jurisdiction in disbarment cases is limited to matters involving misconduct and we cannot create by rule grounds for disbarment which are not predicated upon wrongdoing. Our rule is one of evidence affecting the burden of proof. It is founded solely on the misconduct of the attorney and under it the court has retained full discretion to render such decree as it deems proper in the case.
 

 In addition to the Donegan case, counsel for respondent places reliance in the cases of People v. Brayton, 100 Colo. 92, 65 P.2d 1438; In re Ebbs, 150 N.C. 44, 63 S.E. 190, 19 L.R.A.,N.S., 892, 17 Ann. Cas. 592, and State v. Flynn, 160 La. 483, 107 So, 314.
 

 The question presented in the Brayton and Ebbs cases, like the Donegan case, was whether a state statute, providing that an attorney’s conviction of a felony shall be a summary ground for disbarment, should be construed to include crimes which were not cognizable under the State law. The courts held in the negative. The decisions are not apposite for the reasons heretofore set forth.
 

 In State v. Flynn, supra, disbarment proceedings were instituted against the defendant on the ground that he had been found guilty of professional misconduct while practicing in the State of New York and had been disbarred by the Supreme Court of that State. The defendant ex
 
 *379
 
 cepted to the petition on the ground that the judgment of the New York Court disbarring him was insufficient to set forth a cause of action of misconduct against him under our law and that, in order for a cause of action to be stated, the acts of his miscondtict would have to be alleged. We sustained the exception, and correctly so, on the ground that the judgment of a court of a foreign jurisdiction in a disbarment proceeding did not, in itself, constitute misconduct since the acts upon which that judgment was based may or may not have been considered wrongful under the laws of this State.
 

 The Flynn case is clearly distinguishable from this one for the reason that there is no rule of this court providing that judgments of courts of foreign jurisdictions in disbarment proceedings will be considered as prima facie evidence of the fact of misconduct.
 

 For the reasons assigned, the exception of no cause of action is.overruled and the respondent is ordered to answer within twenty days from the rendition of this decree.
 

 O’NIELL, C. J., recused.
 

 HIGGINS and FOURNET, JJ., dissent.
 

 [1]
 

 201 La. 293.